**In the United States District Court
for the District of Kansas**

———————

Case No. 19-cv-02651-TC

———————

J.L.,

*Plaintiff*

v.

ROYAL VALLEY U.S.D. 337, ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

Plaintiff J.L. filed suit against her former school district and its superintendent, claiming that they violated state and federal law by failing to prevent another student, W.H., from sexually assaulting her. J.L. and Defendants filed cross-motions for summary judgment. Docs. 40 & 41. For the following reasons, J.L.'s Motion for Partial Summary Judgment, Doc. 41, is denied, and Defendants' Motion for Summary Judgment, Doc. 40, is granted in part and denied in part.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over those material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The filing of cross-motions for summary judgment does not alter this standard. Each motion—and its material facts—must "be treated separately," meaning that "the denial of one does not require the grant of another." *Atl. Richfield Co. v. Farm Credit Bank Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

**B**

J.L. contends that in November 2017, W.H. sexually assaulted her while they both attended high school at Royal Valley Unified School District 337. Doc. 43 at ¶¶ 1–3. At the time, she was a sophomore and he was a freshman. Doc. 40 at ¶ 44; Doc. 43 at 1. Her lawsuit is not against W.H, but against Royal Valley and its superintendent, Aaric Davis. Nonetheless, W.H.'s actions, and Defendants' awareness of them, are critical to resolving the summary judgment motions.

**1.** It is undisputed that W.H. had a long history of behavioral issues and disciplinary action while attending elementary and middle schools in the district. J.L. highlights several incidents from W.H.'s fifth-through eighth-grade years that, she argues, had sexual overtones and show a pattern of sexually aggressive behavior. Doc. 43 at 9–11, ¶¶ 21–30 & 34.

J.L. identifies three incidents during W.H.'s fifth-grade year. In one, W.H. told his school bus driver that two children on the bus were jumping up and down on each other and that it "looked like they were having sex." Doc. 40 at ¶ 85; Doc. 43 at 3. The principal subsequently spoke with W.H. about why he chose those words. Doc. 40 at ¶ 85; Doc. 43 at 3. Also that year, W.H. called a female student a "whore" and told her to "die and go to hell." Doc. 40 at ¶ 87; Doc. 43 at 3. W.H. received detention for this behavior. Doc. 40 at ¶ 87; Doc. 43 at 3. Finally, W.H. touched a female classmate's chest on the school bus and received a one-day suspension as discipline. Doc. 40 at ¶ 88; Doc. 43 at 3.

J.L. identifies a single event from W.H.'s sixth-grade year. That event concerned a classroom altercation where W.H. threatened to stab himself with a pencil and made "several verbal outbursts" toward an assistant principal who attempted to intervene. Doc. 40 at ¶ 90; Doc. 43 at 3. As a result, W.H. was suspended for two days. Doc. 40 at ¶ 90; Doc. 43 at 3. "A note associated with the incident," but not resulting in separate discipline, "states W.H. had asked three girls if they shave." Doc. 40 at ¶ 90; Doc. 43 at 3. The timeline or relationship between these events is not clear. Doc. 40 at ¶ 90; Doc. 43 at 3.

J.L. identifies two incidents from W.H.'s seventh-grade year. In one, W.H. slapped a female student on the rear, claiming that "it was slap butt Friday" and that the female student had slapped his rear as well. Doc. 40 at ¶ 94; Doc. 43 at 3. The principal instructed W.H. to stay away from the other student and suspended W.H.'s school email account. Doc. 40 at ¶ 94; Doc. 43 at 3. In the other incident, W.H. solicited pornographic photos from female students by way of the students' private cell phones. Doc. 40 at ¶¶ 14–16; Doc. 43 at 3. This occured over a weekend and while none of the students were on school property. Doc. 40 at ¶¶ 14–16; Doc. 43 at 3. A concerned parent notified the principal of those solicitations, and the school reported the call to law enforcement. Doc. 40 at ¶¶ 14–17; Doc. 43 at 3.[1] Local authorities investigated the claim and charged W.H. in juvenile court. Doc. 40 at ¶ 25; Doc. 43 at 3. He eventually pled no contest to electronic solicitation, sexual exploitation of a child, and criminal threat. Doc. 40 at ¶¶ 18, 25–27; Doc. 43 at 3.

J.L. identifies one incident from W.H.'s eighth-grade year. A female classmate alleged that W.H. forcibly attempted to kiss her while they were both in the band room. Doc. 40 at ¶ 30; Doc. 43 at ¶ 34; Doc. 44 at 7. W.H. claimed that the female student initiated the kiss with him. Doc. 40 at ¶ 31. The school's investigation was inconclusive. Doc. 40 at ¶ 32. Still, the principal instructed staff to keep the two students separated and to store W.H.'s instrument in another location. Doc. 40 at ¶ 34. The principal also notified law enforcement of the situation. Doc. 40 at ¶ 36. Following law enforcement's investigation,

---

[1] J.L. argues that Royal Valley did not "know" at the time whether the solicitation occurred on school grounds or not, but she does not controvert the fact that the solicitation *did* indeed occur off-campus. *See* Doc. 43 at 3.

the prosecutor filed battery charges against W.H. in juvenile court and W.H. ultimately pled no contest. Doc. 40 at ¶¶ 39–41.[2]

J.L. identifies no other sexually charged conduct attributable to W.H., but there were at least fourteen *other* behavioral and disciplinary events in W.H.'s file. These incidents range from fighting, pushing, and kicking male students to showing disrespect to teachers, lying about homework, and attempting self-harm. Doc. 40 at ¶¶ 81–101; Doc. 43 at 3. In other words, sexually aggressive conduct was not the whole, or even the majority, of W.H.'s notable pre-2017 behavior.

**2.** W.H. started high school in 2017. Until his November 1 encounter with J.L. that fall, he had no noteworthy behavioral incidents at the high school.

**a.** What happened between W.H. and J.L. that day is hotly disputed. J.L. contends that W.H. forcibly raped her in a school bathroom during an after-school theater practice. Doc. 40 at ¶¶ 42–46; Doc. 43 ¶ 1; Doc. 42 at ¶ 1. W.H., on the other hand, claims that their sexual encounter was consensual.[3] Doc. 44 at 1. Royal Valley and Superintendent Davis point to the fact that the criminal charges filed against W.H. were dismissed with prejudice. Doc. 44 at 1.

---

[2] Without offering any contrary evidence as to Defendants' account of the band room incident, J.L. asserts (without explaining, analyzing, or establishing) that Defendants' evidence—testimony from Royal Valley's Fed. R. Civ. P. 30(b)(6) representative about the school's knowledge of and response to the incident—is inadmissible hearsay. *See* Doc. 43 at 3–4. That objection is overruled. *See Bowers v. Netsmart Techs., Inc.*, No. 2:19-CV-2585, 2021 WL 2104985, at *4 n.26 (D. Kan. May 25, 2021); *see also Velez v. SCL Health-Front Range, Inc.*, No. 14-cv-02179, 2015 WL 9315574, at *2 nn.4–5 (D. Colo. Dec. 23, 2015).

[3] J.L. objects to W.H.'s declaration because it was executed after discovery had closed and submitted in a pleading filed three days late. Doc. 49 at 1. That objection is overruled. The Court granted leave to file the identified pleading out of time. Doc. 51 (finding the untimely filing occurred in good faith, caused no delay in the proceedings, did not prejudice Plaintiff, and satisfied the excusable-neglect standard). And there is no requirement that a litigant obtain or even disclose affidavits or declarations during discovery— only that they timely disclose their own potential witnesses and timely conduct any formal discovery of others' that they elect to conduct. *Chen v. Dillard Store Servs., Inc.*, No. 13-2358, 2016 WL 107933, at *6 (D. Kan. Jan. 8, 2016); *see also Poulton v. Wal-Mart*, No. 18-cv-957, 2021 WL 3072603, at *3 (D. Utah June 17, 2021) (slip op.).

The qustion is whether that dispute is material. The answer depends on which motion is under consideration. *See Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1249 (10th Cir. 2020) (noting substantive law determines whether a fact is material and directing the factual record be construed in the light most favorable to the non-moving party); *Atl. Richfield*, 226 F.3d at 1148 (directing cross-motions be separately analyzed). For Defendants' motion, this factual dispute is immaterial to whether Defendants can be liable for the alleged rape because Defendants' legal arguments do not depend on whether the rape in fact occurred. In other words, for the purposes of Defendants' motion, the assault may be assumed to have occurred exactly as J.L. describes. In contrast, the legal arguments in J.L.'s motion depend on the specific nature of the encounter (*i.e.*, whether it was consensual). For her motion, the disputed fact is material. *See Atl. Richfield*, 226 F.3d at 1148.

**b.** Following the assault, J.L. notified several people about the incident. She spoke first to a couple of her friends and then to John Calvert, a sheriff's deputy stationed inside the building as the sherriff's designated school resource officer.[4] Doc. 40 at ¶¶ 45–48; Doc. 43 at 3. Calvert called a detective, who conducted an interview of J.L. Doc. 40 at ¶ 48; Doc. 43 at 3. She was then taken to the hospital for a medical examination. Doc. 40 at ¶ 49; Doc. 43 at 3.

Defendants were not immediately informed about the incident. Law enforcement did not notify Royal Valley of J.L.'s assault allegations. *See* Doc. 40 at ¶¶ 55–58.[5] J.L. did not make a formal report to the school. She did disclose during a lunch with teacher Samantha White that she had been raped. But she did not recall when this conversation with White occurred, did not name the perpetrator, and did not share any other details. Doc. 40 at ¶ 50; Doc. 43 at 3. It is not even clear from the summary judgment record that J.L. told White the rape occurred at school. White then reported that conversation to Calvert, but he told White that he was already aware and that the matter was already under investigation. Doc. 40 at ¶ 51.

---

[4] Deputy Calvert was not a Royal Valley employee. He worked exclusively for the Jackson County Sheriff's Department. Doc. 40 at ¶ 12; Doc. 43 at 3.

[5] J.L. attempts to controvert this fact by again claiming inadmissible hearsay. Doc. 43 at 4. For the same reasons stated in Note 2 *supra*, her objection is overruled.

5

The high school principal first learned that there had been an "incident" involving J.L. on November 13, 2017. On that date, during a phone call with the school counselor about an unrelated matter, J.L.'s father asked if the counselor "kn[e]w about the incident that happened at school." Doc. 40 at ¶ 56. He then refused to further clarify and hung up. *Id.* The counselor reported the call to the principal, who in turn, inquired of Calvert whether he was aware of any incidents. *Id.* at ¶¶ 57–58. Calvert told the principal there had been a rape but refused to identify the perpetrator. *Id.* at ¶¶ 59–60. The next day, the principal contacted Superintendent Davis, who then called Calvert and learned that W.H. was the alleged attacker and had already been arrested. *Id.* at ¶¶ 60, 62.

**c.** The record indicates that between the incident (November 1) and W.H.'s arrest (November 13), W.H attended school or school activities on only two days (November 10 and 11). Doc. 40 at ¶ 70; Doc. 43 at 3. The summary judgment record does not indicate what, if any, interaction W.H. had with J.L. during that time. More importantly, the summary judgment record indicates that no Royal Valley employee knew that W.H. was the alleged perpetrator until November 14—the day after his arrest.

Meanwhile, J.L. endured harassment from other classmates, including W.H.'s friends, about the rape. Specifically, she received text messages and saw social media posts that caused her to experience panic attacks and to begin eating lunch in White's classroom more frequently than she did before the assault. Doc. 42 at ¶ 41; Doc. 43 at 12, ¶ 41.[6]

**3.** J.L. filed suit against both Royal Valley and Davis. With regard to Royal Valley, she contends that the school district violated her rights under Title IX, 20 U.S.C. § 1681. In particular, she claims that she was discriminated against on the basis of her sex, because Royal Valley knew of—and was deliberately indifferent to—W.H.'s harassment of female students, thereby creating a hostile environment and effectively depriving J.L. of educational opportunities. J.L. also asserts 42 U.S.C. § 1983 claims against Royal Valley in its official capacity, claiming that it denied her rights to substantive due process and equal protection by

---

[6] Defendants attempt to controvert this fact because J.L. did not report the post-rape harassment to an appropriate school administrator. *See* Doc. 44 at 8. But J.L.'s statement of facts does not claim that she made a report, and while the cited testimony indicates she confided in White about social-media harassment, J.L. has not provided any evidence to suggest that White or Royal Valley was aware of any harassment occurring *at* the school.

failing to train employees to investigate sexual harassment and by adopting a custom of failing to respond to student-on-student harassment. She does not allege an individual-capacity Section 1983 claim against anyone, including Davis. Additionally, she alleges that both Royal Valley and Davis were negligent in their supervision of W.H. and in failing to adhere to their own anti-harassment policies. All parties have sought summary judgment on one or more claims. Doc. 40; Doc. 41.

## II

The parties' cross-motions for summary judgment are granted in part and denied in part. In particular, Defendants' request for judgment as a matter of law on J.L.'s Title IX and constitutional claims are granted. For the same reasons, J.L.'s opposing motion is denied. But Defendants' motion for summary judgment on J.L.'s state-law negligence claim is denied as to Royal Valley, because there is a genuine dispute of material fact as to whether its conduct was reasonable in light of the circumstances and it enjoys no immunity from those claims. The same motion is granted as to Davis, however, who is immune under the Coverdell Act.

### A

J.L.'s contends that Royal Valley discriminated against her in violation of Title IX. That law provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). That provision gives rise to an implied private right of action against a recipient of federal education funding for money damages when the discrimination arises from student-on-student sexual harassment. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639–44 (1999).

*Davis* held that a covered entity, such as Royal Valley, may only be held responsible for its own decisions and conduct. The entity may not be held responsible for the acts of others, whether through application of vicarious liability, negligence, or other agency principles. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283 & 290 (1998). To confine Title IX liability to those cases in which the school district itself acted unlawfully, *Davis* imposes liability only if the district remains deliberately indifferent to acts of harassment of which it has actual knowledge. 526 U.S. at 644–45 The Tenth Circuit has held that this means "a school district [will be] liable only where it has made a conscious

7

decision to permit sex discrimination in its programs, and precludes liability where the school district could not have remedied the harassment because it had no knowledge thereof or had no authority to respond to the harassment." *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1246 (10th Cir. 1999); *see also Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008).

The deliberate-indifference standard under Title IX is a high hurdle and does not dictate any specific manner of dealing with peer harassment. As the Court in *Davis* observed, to avoid liability the covered entity "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 649. This standard is even less demanding than the exercise of ordinary care. *Id.*; *see also Rost*, 511 F.3d at 1121.

J.L. offers two reasons for why she believes that Royal Valley was deliberately indifferent. First, she alleges that Royal Valley failed to anticipate and prevent her assault. Second, she argues that Royal Valley failed to protect her from being harassed by other students after the assault. Doc. 43 at 17–18. Neither is sufficient to meet the burden that *Davis* and its progeny impose.

**1.** Royal Valley's response was not clearly unreasonable. The most that can be said about Royal Valley's response to W.H.'s behavior is that it was debatable and may not, with the aid of hindsight, have been the best course of action. But, even so, it was not clearly unreasonable.

Much of J.L.'s argument focuses on the seven disciplinary incidents that she contends were sexual in nature during W.H.'s fifth-through eighth-grade years.[7] But each time, Royal Valley responded in a way that attempted to correct or punish W.H.'s behavior, within the school system or, where necessary, by involving law enforcement.

The events from W.H.'s fifth and sixth grade are emblematic of Royal Valley's response. When W.H. commented to a bus driver that two students were jumping on each other "like they were having sex," called a female student a "whore," asked inappropriate questions to three female students, and touched a female student's chest, W.H was sent to the principal's office, received detention, and was suspended.

---

[7] During this same time frame, W.H. had twice as many disciplinary incidents that are not alleged to have involved any sexual misconduct.

So too with the identified incidents in the seventh and eighth grades. After W.H. slapped a female student on her buttocks, Royal Valley directed him to have no further contact with the student he touched and suspended his school email account. After he solicited sexual photographs from female students, an event that occurred off campus and outside school hours, Royal Valley reported the occurrence directly to law enforcement, who investigated and obtained a juvenile conviction. And after he attempted to forcibly kiss a classmate in the band room, Royal Valley investigated, took preventative measures to keep W.H. separated from the alleged victim, and again reported the occurrence to law enforcement, who again investigated and prosecuted.

J.L.'s argument, that Royal Valley could have or should have taken additional measures, is insufficient to impose liability. *Contra* Doc. 43 at 15–16. The evidence shows that Royal Valley responded with increasing levels of punishment and, where necessary, brought in law enforcement to investigate and prosecute as appropriate. On these facts, no reasonable jury could determine that Royal Valley's response to W.H.'s behaviors was clearly unreasonable. *Davis*, 526 U.S. at 648–49; *see also Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1314 (10th Cir. 2020) (holding total failure to investigate could be evidence of deliberate indifference but that "[i]t would be a different story if the District had referred the matter to another institution, such as the police, to investigate"); *Rost*, 511 F.3d at 1123.

**2.** J.L. also fails to offer evidence suggesting that Royal Valley was deliberately indifferent to harassment from other students about the rape. *Contra* Doc. 43 at 18. She offers no admissible evidence that Royal Valley knew of any peer harassment and failed to act.

The disclosure that J.L. made to a teacher (Samantha White) about the harassment is insufficient to establish deliberate indifference. J.L. told White only generally that she was being harassed via social media and messaging apps by friends of the perpetrator. But J.L. declined to identify W.H. to White or otherwise describe the offensive conduct. Thus, the summary judgment record does not indicate that White knew the perpetrator or harassers were other Royal Valley students or that she knew any harassment was occurring at or during school. *Atl. Richfield Co. v. Farm Credit Bank Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) ("When the parties file cross motions for summary judgment, 'we are entitled to assume that no evidence needs to be considered other than that filed by the parties'"). The evidence does confirm, however, that White immediately notified law enforcement (Deputy Calvert) and that she was told an investigation was already underway. The

school could not have been deliberately indifferent to peer harassment about which it lacked knowledge. *See Davis*, 526 U.S. at 650.

The same can be said about the potential interactions with W.H. on the two days that he attended school prior to his arrest. Neither J.L. nor the law enforcement personnel to whom she had reported the rape notified Royal Valley of J.L.'s allegations or of law enforcement's ongoing investigation. In fact, Royal Valley did not learn that W.H. was the alleged perpetrator until November 14, the day after his arrest. In short, Royal Valley had no opportunity to be deliberately indifferent to any threat W.H. may have posed to J.L. *after* the rape, because neither the school nor the district knew of his involvement until after he stopped attending. This is insufficient, as a matter of law, to constitute deliberate indifference. *See Davis*, 526 U.S. at 649–50.

**B**

J.L. has also alleged three counts under Section 1983. That statute provides an avenue of recovery when a "person" acting on behalf of a state, "causes" a deprivation of federal rights. 42 U.S.C. § 1983. In this case, J.L. has alleged violations of her substantive due process and equal protection rights under the Fourteenth Amendment. Substantive due process protects citizens against arbitrary governmental deprivations of their rights—including the "right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Equal protection provides the right to be free from, among other things, sex discrimination—including that imposed by a hostile educational environment. *See Escue v. N. Okla. College*, 450 F.3d 1146, 1157 (10th Cir. 2006).

Unlike in the realm of tort, there is no vicarious liability or respondeat superior for Section 1983 claims. *Monell v. Dep't of Soc. Servs. N.Y.*, 436 U.S. 658, 694 (1978). Where, as here, a plaintiff alleges that an entity has violated Section 1983, she must show not only that there was an underlying violation of her federal rights, *see, e.g., Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998), but also that the entity itself is responsible for that violation through an official custom or policy, *see, e.g.*, *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986); *accord Crowson v. Washington Cty.*, 983 F.3d 1166, 1186 (10th Cir. 2020) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

J.L. argues that Royal Valley bears liability for adopting a custom or persistent practice of failing to respond to sexual harassment and for failing to train employees to prevent sexual injury. Doc. 43 at 18–21. The focus of her claims is on Royal Valley, opting not to establish that any employee (or group of employees) caused her to suffer a

deprivation of her constitutional rights. Doc. 38 at ¶ 4.a.(2)-(4) (limiting her constitutional claims to the school district). But the Tenth Circuit has repeatedly held "that there must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable." *Crowson v. Washington Cty.*, 983 F.3d 1166, 1191 (10th Cir. 2020);[8] *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that where jury found officer did not use excessive force, "the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point") (emphasis added).

J.L. has not established that Royal Valley (or anyone acting on its behalf) violated her Fourteenth Amendment rights. Sexual assault *by* a government official can constitute a substantive due process violation, *see, e.g., Abetya v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996), but the government's failure to protect one citizen against the violent acts of another cannot, *DeShaney v. Winnebago Cty. Dep't Soc. Servs.*, 489 U.S. 189, 195 (1989). *See also Liebson v. N.M. Corr. Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).[9] So too with equal protection: state action is necessary. W.H.'s rape of J.L. does not constitute a constitutional deprivation for which Royal Valley can be held responsible because J.L. identifies no Royal Valley policy, custom, or practice that caused her to be subjected to a constitutional deprivation. *Murrell*, 186 F.3d at 1250 & n.7. To the contrary, the undisputed facts show that each time an incident occurred, school officials investigated, notified law enforcement, or imposed a penalty on W.H. Thus, Royal Valley and its personnel responded to W.H.'s conduct in ways that no reasonable jury could describe as deliberately indifferent—much less as the "moving force" behind the attack on J.L. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Consequently, any failure to prevent W.H.'s assault did not constitute a deprivation of J.L.'s equal

---

[8] *Crowson* identified a "limited exception" to this rule. 983 F.3d at at 1191 (permitting a claim to proceed against an entity based on a "systemic failure of medical policies and procedures"). J.L. does not rely on *Crowson* or the limited exception it identified, arguing instead that Royal Valley staff failed to respond appropriately and failed to train its employees. That fails as a matter of law. *See Crowson*, 983 F.3d at 1191 (applying the general rule from *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155–56 (10th Cir. 2001)).

[9] There are two exceptions to this rule, but neither applies here. *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994–95 (10th Cir. 1994) (clarifying that schools are not students' custodians for purposes of custodial-relationship exception and that their failure to act even in the face of known danger does not constitute "danger creation").

protection or due process rights, and Royal Valley is entitled to summary judgment on these claims.

## C

J.L contends that Royal Valley and Davis were negligent in failing to follow nondiscretionary policies that prohibit sexual harassment against students, failing to require the investigation of sexual harassment, and failing to require prompt, remedial action to prevent the reoccurrence of sexual harassment. Doc. 38 at ¶ 4.a.(5). Defendants seek summary judgment, arguing that they owed no duty to J.L. and that, even if they did, they are immune from liability.

**1.** Kansas substantive law controls. Doc. 38 at ¶ 1.d.; *see also* Doc. 40 at 32; Doc. 43 at 21. There are four elements to a negligence claim: (i) defendant's duty owed to plaintiff, (ii) defendant's breach of that duty, and (iii) plaintiff's damages (iv) proximately caused by the breach. *Patterson v. Cowley Cty.*, 413 P.3d 432, 437 (Kan. 2018). The issues of breach, causation, and damage are all questions of fact, rarely amenable to summary judgment. *Thomas v. Cty. Comm'rs Shawnee Cty.*, 262 P.3d 336, 346 (Kan. 2011). Whether one party owes a duty to another, however, is a question of law. *Patterson*, 413 P.3d at 437.

Under Kansas law, high schools do have a duty "to properly supervise students and to take reasonable steps to protect their safety" while on school premises. *Dunn v. Unified Sch. Dist. No. 67*, 40 P.3d 315, 326 (Kan. Ct. App. 2002). This duty is more demanding than the duties higher education institutions owe to their adult students. *Id.* at 326–27 (observing that universities owe only a duty of ordinary care "to their adult students" but that "high schools act *in loco parentis* with respect to [their] students"); *see also Beshears ex rel Reiman v. Unified Sch. Dist. No. 305*, 930 P.2d 1376, 1381 (Kan. 1997). But the duty ordinarily does not extend to protecting students from third-party criminal attacks, unless such attacks are reasonably foreseeable and within the school's control. *Beshears*, 930 P.2d at 1381–83; *see also Nero v. Kan. State Univ.*, 861 P.2d 768 (1993) (university context).

The evidence is sufficient to create a question of fact as to whether W.H.'s attack on J.L. was reasonably foreseeable and whether the steps that Defendants took were sufficient given W.H.'s prior conduct. W.H. had a lengthy history of disruptive behavior in the years prior to the rape, including multiple incidents that a jury could conclude gave rise to a suspicion that he might engage in sexual violence or should be monitored while on school property. Reasonable minds could reach different conclusions about W.H.'s past behavior, including both the

seriousness of his past acts—in light of the surrounding circumstances of age, social context, sexual maturity, etc.—and what they might reasonably portend. Moreover, where Royal Valley took disciplinary measures, conducted investigations, and involved law enforcement, but still permitted W.H. to participate in after-school activities without increased supervision, there is sufficient evidence for a reasonable jury to find that Defendants breached their duty to J.L. and the breach of that duty caused her injuries. *Cf. Nero*, 861 P.2d at 782–83. Thus, Defendants are not entitled to judgment on this basis.

**2.** Defendants claim that the Coverdell Act, 20 U.S.C. § 7946, and two exceptions to the Kansas Tort Claims Act (KTCA), K.S.A. § 75-6104, provide immunity from J.L.'s negligence claim.

**a.** Defendants assert that the discretionary function and policy enforcement exceptions within the KTCA provide them immunity. The discretionary function exception, K.S.A. § 75-6104(e), provides that government entities will not be liable for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion is abused and regardless of the level of discretion involved." The policy enforcement exception, K.S.A. § 75-6104(d), provides that government entities will not be liable for claims resulting from the "adoption or enforcement of, or failure to adopt or enforce, any written personnel policy which protects persons' health or safety unless a duty of care, independent of such policy, is owed to the specific individual injured . . . ." Neither exception applies here.

The Kansas Supreme Court has previously refused to apply the discretionary function exception in similar circumstances. *See Nero*, 861 P.2d at 781–83. *Nero* involved a peer-on-peer sexual assault in a common area of university housing. There, the court observed that under the KTCA "liability is the rule and immunity is the exception" and that, when analyzing the discretionary function exception, the "focus is on the nature and quality of the discretion exercised." *Id.* at 781 (internal quotation marks omitted). Some amount of judgment is exercised in every situation, so the question is not whether discretion was employed but in what context. *See id.* The types of discretionary decisions that Kansas law places "beyond judicial review" are only those that "involve some element of policy formulation." *Kan. State. Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 599–600 (Kan. 1991). Thus, purely ministerial functions cannot give rise to immunity, and neither can acts for which "there is a clearly defined mandatory duty or guideline" imposed by case law or statute. *Nero*, 861 P.2d at 781–82; *Kan. State Bank*, 819 P.2d at 600. So, in *Nero*, the Kansas Supreme Court

13

held that the university's decision to provide student housing was discretionary but "[o]nce that discretionary decision was made, [the university] had a legal duty to use reasonable care under the circumstances in protecting the occupants of the coed housing unit from foreseeable criminal conduct while in a common area." 861 P.2d at 782.

Defendants cannot succeed under *Nero*. While Royal Valley exercised discretion in choosing to conduct after-school activities (such as the theater practice at which J.L. was assaulted), once it did so the law required Royal Valley to properly supervise and protect students in attendance. It is not excused from this duty by any discretionary function immunity. *Cf. Nero*, 861 P.2d at 782.

As for the policy enforcement exception, it applies only when the duty of care arises *from* the adopted policy in question. The relevant statute prevents liability arising from the adoption, enforcement, or failure to adopt or enforce a written policy protecting a "person['s] health or safety *unless a duty of care, independent of such policy, is owed to the specific individual injured*." K.S.A. § 75-6104(d) (emphasis added). Thus, it does not apply whenever a defendant's duty of care exists independent of the adopted policy. *See Jarboe v. Bd. of Cty. Comm'rs*, 938 P.2d 1293, 1295 Syl. ¶ 1 (Kan. 1997); *Estate of Belden v. Brown Cty.*, 261 P.3d 943, 965–66 (Kan. Ct. App. 2011). The source of Royal Valley's duty of care to J.L. is Kansas common law and not an affirmative, additional policy that Royal Valley adopted. Thus, this exception cannot protect Defendants from negligence liability.

**b.** Defendants also claim immunity under the Coverdell Act, 20 U.S.C. § 7941 *et seq*. That statute immunizes teachers and administrators for ordinary negligence in the scope of their employment, where their acts or omissions were carried out in conformity with federal and local law in an effort to maintain order. 20 U.S.C. § 7946; *Sanchez v. Unified Sch. Dist. 469*, 339 P.3d 399, 406 (Kan. Ct. App. 2014); *see also Nkemakolam v. St. John's Military Sch.*, 890 F. Supp. 2d 1260, 1263 (D. Kan. 2012); *Dydell v. Taylor*, 332 S.W.3d 848 (Mo. 2011); *Husk v. Clark Cty. Sch. Dist.*, 281 P.3d 1183, 2009 WL 3189347 (Nev. 2009). J.L. does not contest that this immunity applies to, and requires judgment in favor of, Davis. Doc. 43 at 23. As a result, Davis is entitled to judgment as a matter of law based on that immunity.

While the immunity applies to administrators, J.L. argues that it does not extend to entities, such as Royal Valley. Doc. 43 at 23; *see also Sanchez*, 339 P.3d at 406–07. Defendants disagree, asserting that the KTCA's "adoptive immunity" extends Coverdell immunity to Royal Valley. Doc. 47 at 11.

Adoptive immunity directs that "[a] governmental entity . . . shall not be liable for damages resulting from . . . any claim which is . . . for injuries or property damage against an officer, employee or agent where the individual is immune from suit or damages." K.S.A. § 75-6104(i). Stated differently, adoptive immunity prevents governmental employers from being liable under respondeat superior for the conduct of immunized employees. *Sanchez*, 339 P.3d at 411 ("[T]he adoptive immunity exception to liability reflects an intent by the legislature to ensure that, in applying the doctrine of respondeat superior, a governmental entity has available to it the same defenses and limitations on liability that would be available to the private employer in comparable circumstances."). As in *Sanchez*, Royal Valley is immune from liability for the acts and omissions of Davis, but it is not entitled to immunity with respect to its own acts and omissions. *See id.*

## D

J.L.'s cross-motion for summary judgment, which seeks judgment in her favor on the Title IX and Section 1983 claims, is denied—both for the reasons of law stated above and because, for purposes of J.L.'s summary judgment motion, there remains a genuine dispute of material fact about the nature of J.L.'s encounter with W.H.

## III

For the reasons set forth above, Plaintiff's Partial Motion for Summary Judgment, Doc. 41, is DENIED and Defendants' Motion for Summary Judgment, Doc. 40, is GRANTED in part and DENIED in part. Because judgment has been entered in favor of Defendant Aaric Davis on all claims against him, he is hereby dismissed from this case.

It is so ordered.

Date: September 15, 2021            s/Toby Crouse
                                    Toby Crouse
                                    United States District Judge